please call the case set for this morning. Counsel please approach. Introduce yourselves and approximately how much time you wish to have for argument. Good morning, Your Honors. My name is Whitney Price with the Office of the State Appellate Defender representing James Jackson. I'd like to request 15 minutes for argument and reserve three minutes for rebuttal, Your Honor. Fine. Thank you. Thank you. Good morning, Your Honors. Assistant State's Attorney Sheila O'Grady-Kroniak on behalf of the people. I would request 10 minutes for argument at Your Honor's discretion. Thank you. Any time you'd like. Any time is fine. Thank you. Good morning, Your Honors. Counsel may approve the court. With this court's permission, I intend to focus on reasonable doubt in Issue 1, and I will also touch upon the trial issues raised in Issue 3 of the briefs. When Mr. Jackson called 911, he could not have anticipated that his call for help would trigger a dramatic chain of events that led to his criminal prosecution. Mr. Jackson, 47 years old, suffered from recurrent seizures that required hospitalization. He had braces on his legs to help him walk. When the paramedics arrived, he was incoherent, confused, and clearly having a medical emergency. Yet the police approached him in the small entryway of his apartment building, and he fell to the floor, banging his head and flailing his limbs uncontrollably. Let me ask you, Ms. Price, when the paramedics come and Mr. Jackson says, you're not the ambulance, he won't believe them. They show him the ambulance, he won't believe them. Then he starts fighting with them. They, as they're trained to do, call the police because they don't deal with combative people. The police come, Mr. Jackson is even more combative. What should they have done? In this case, Your Honor, the police approached Mr. Jackson in the entryway of his apartment building when he was flailing about. He had no key to get back into his apartment, right? Yes, exactly. And they tased him, not just once, multiple times. So regardless of whether they should have approached Mr. Jackson, they should never have tased him. Should they have loved? The police are there to assist the paramedics, and the paramedics responded to a 911 call by Mr. Jackson asking for help. Should the paramedics have loved? The paramedics were there to provide medical assistance to Mr. Jackson, and indeed what occurred here was the police tried to assist the paramedics in helping Mr. Jackson, and they tried to handcuff him and put him on the gurney and stretcher and put him into the ambulance. And what happened was that Mr. Jackson kicked an officer in the shins. And in this case, the State brought charges against Mr. Jackson, who was clearly having a medical emergency, and brought charges for battery and resisting arrest. In this case, those charges should never have been brought. And even when they were brought, the State failed to meet its burden to prove that Mr. Jackson's conduct was voluntary. Why shouldn't the charges have been brought? The charges should not have been brought in this case, Your Honors. You can see from the facts that we've demonstrated in the briefs that Mr. Jackson was undergoing a medical emergency. All of the witnesses in this case agree that Mr. Jackson was undergoing some kind of medical emergency, whether his mental state was altered. They also agree that he was suffering from a medical condition that they could not assess, and he was clearly, quote, in need of some kind of medical attention. Mr. Jackson called 911 and said he needed an ambulance. He called for help. And when the police and paramedics arrived, he was suffering from that medical condition. Mr. Jackson had a history of seizures, and the defense presented uncontested evidence that he had been hospitalized for seizures on 20 different occasions. And the State's witnesses in this case agree that seizures present differently in different people. But you say the paramedics who deal with people having seizures all the time should not have been permitted to testify that he wasn't having a seizure. What they testified to, Your Honor, is that Mr. Jackson was undergoing a medical emergency of some sort. Two of the paramedics replied that he was not undergoing a seizure. However, they couldn't say that with 100 percent certainty, and they agreed that seizures present differently in different people. So why isn't that a jury question? The jury question in this case was whether Mr. Jackson's act was voluntary. When the paramedics testified, the jury is allowed to make reasonable inferences. There's no reasonable inference that can be taken from the paramedics' testimony in this case because their testimony corroborated Mr. Jackson's defense that he was suffering from some kind of medical condition and demanded medical attention. The standard we deal with is no reasonable jury could have concluded that Mr. Jackson's conduct was intentional. You have a person who is kicking and punching, according to the paramedics and the police. He is speaking in sentences, while they may not make sense, are still speaking, don't touch me, get away from me, you're not the ambulance. He's conscious. And you have paramedics who, by virtue of their experience, say, we don't believe this man was having a seizure. You have his girlfriend, on the other hand, saying he suffers from seizures. I think he was either going in or coming out of a seizure when they were bringing him to the ambulance. How could, under those facts, no rational trier of fact have found that his actions were voluntary? Well, we have to look at the standard in Ortiz, the Supreme Court standard in Ortiz, which says a court must set aside a conviction, obtain through evidence going reasonable, improbable, or unsatisfactory that it creates a reasonable doubt of guilt. Here the paramedics, as you said, testified that he was not undergoing a seizure, in their opinion, in their opinion based on their limited experience with a certain type of seizure that they testified to. But they also testified to, and I'll point to different points in the record, that something, quote, was medically going on with Mr. Jackson, that he needed, quote, some kind of medical attention, that his mental status was, quote, altered at the time, that he was, quote, ill, and that he seemed, quote, irrational. So whether or not the paramedics testified, which they said they couldn't be 100 percent certain that he was undergoing a seizure, something clearly was going on with Mr. Jackson. And the issue in this case isn't what occurred in the entryway. It's whether the State has proved its burden beyond a reasonable doubt. So when the paramedics say, I've dealt with, in one case, hundreds of seizures, and in the other one, a thousand seizures, and they both say, in my opinion, this man was not undergoing a seizure, that he leaned over and bit me, that he kicked the officer as soon as he came into the vestibule, I guess I'm confused because you're relying on a statement where the paramedic says, I can't be 100 percent sure about the seizure. And so that's enough to create a reasonable doubt? That, along with the other statements to the record that I just mentioned, that something clearly was going on with Mr. Jackson in a medical sense. They stated that he was having a medical emergency that they could not assess. So I would take issue with the fact that the paramedics stated with any sort of definitiveness that Mr. Jackson was not undergoing some sort of medical emergency because they said that they could not assess Mr. Jackson medically. So does the existence of a medical emergency then necessitate a finding, basically as a matter of law, that the patient's conduct is involuntary? No, Your Honor. What we're saying here is that Mr. Jackson has raised a doubt, has brought into issue his voluntariness. And when he's brought that into issue by raising evidence that he, in this case, was having a seizure, the State has to meet its burden. The State has to meet its burden to rebut that evidence that his conduct was voluntary. In this case, the State did not rebut Stephanie Stelly's testimony that he had a history of seizures, 20 of which required hospitalization, or that his head was moving from side to side, indicating in her experience that he was having a seizure. In fact, paramedic Stapleton agreed that Mr. Jackson was moving his head from side to side. And the other paramedic in this case said, quote, we have no idea what kind of medical issue Mr. Jackson may or may not have been having. So in this case, the State's witnesses actually corroborated Mr. Jackson's defense. It's true that the State's witnesses testified that he was acting deliberately, kicking and punching, and intentionally pulling away. But other involuntary conduct cases in this State have held that automatism negates voluntariness, even when the defendant appears to be acting intentionally. Now, point beyond this. But most cases involved experts who testified for the defendant, right? They did, Your Honor. They involved, those cases were Koninko and Nelson. And two experts did testify, but expert testimony is not required to put into issue the fact that Mr. Jackson's actions were involuntary. Some evidence is required, but Mr. Jackson put that issue, put that evidence at issue. Were the paramedics qualified to express an opinion on whether or not Mr. Jackson was having a seizure? No, Your Honor. And that's another issue that I've addressed in this brief in Issue 3. I won't be touching on that today unless Your Honor wishes that I do. But they were qualified as experts. Well, I think my one comment is assume that they were qualified. I'd like for you to address that issue. Yes, Your Honor. No, the paramedics in this case were not qualified as experts. They were not put forth as experts. However, as Your Honor pointed out, the State did rely on their specialized knowledge in closing and in rebuttal to suggest that they had the premium of expert testimony, even though they only provided lay witness testimony. Was there an objection? There was an objection, Your Honor, during closing, but it was sporadic to their testimony at trial. So this issue was not preserved. And I recall seeing rather extensive cross-examination by defense counsel on the types of seizures and the experience that these officers had. And I don't recall seeing an objection by defense counsel to their experience or their ability to offer these opinions. That's correct, Your Honor. And we do raise counsel's ineffectiveness of counsel for not objecting to the slay witness testimony. And, in fact, the prosecution also relied on the slay witness testimony in closing argument, and we argued that the prosecutor erred in doing so. So there's a couple of instances in which the specialized testimony, the quote-unquote specialized testimony of the paramedics was at issue here. And what we can say here is that they expressed a specialized opinion, but the reliability requirements for expert testimony were not met in this case. And the reliability requirements were especially necessary because neither of the witnesses expressed any familiarity with the two different types of seizures that are examined in the Oner Supreme Court's case in Grant, for example, psychomotor seizures versus grand mal seizures. Okay. No evidence at trial about psychomotor or grand mal seizures. I don't know how we get to that evidence. Your Honor, that evidence, which we cited to primary authority in people who grant, is to bring up the point that the specialized knowledge that was taken for granted here by the court in this case, and the jury, in fact, in this case, was never passed the test of reliability. So we have here two paramedics expressing their ideas based on their knowledge and their experience about what type of seizures or what type of behaviors are a part of seizure activity, yet they never testified to how they had that knowledge, what that knowledge was based on, and how they tested that knowledge when they examined Mr. Jackson. So none of the reliability requirements are met in this case. Your Honors, the State had the burden to prove that Mr. Jackson performed a voluntary act. The State argues that no testimony established at trial that Mr. Jackson suffered from a seizure. Mr. Jackson did not have the burden to definitively establish a seizure. The State has the burden with regard to every essential element of the crime. And Nelson and Koninko teach us that once some evidence of involuntary conduct has been presented, the State has to rebut that evidence to prove that Mr. Jackson's actions were voluntary. For example, in this case, the State presented no evidence, medical evidence, to disprove Mr. Jackson's seizure. This is not a case of this. Alitzan, people who were there, what evidence could the State have offered? The State could have offered medical testimony, could have offered rebuttal evidence to Mr. Jackson's history of seizure activity and his hospitalizations that had occurred 20 different times. Mr. Jackson was taken to the hospital after he called the ambulance and after the actions occurred in the entryway of his apartment building. There was abundant evidence that the State could have presented to rebut, and they presented none. So in this case, the State has not met its burden to prove a voluntary act. This is not a case where the defendant was committing a crime and thereafter tried to resist or evade arrest. Mr. Jackson called for help. The State's arguments ignore the fact that all of the witnesses in this case agree that Mr. Jackson was in the midst of a medical emergency. Because the burden rests on the State to prove his knowledge in a voluntary act, this Court should reverse his convictions. In addition, even if this Court does not fully agree with Mr. Jackson's reasonable doubt argument, as argued in the briefs, at the very least, the evidence is closely balanced. So Mr. Jackson will prevail on Issue 2 regarding 431B issue where the State has conceded error. Why is it closely balanced? Your Honor, as I previously argued, Mr. Jackson presented unrebutted evidence that he was suffering from a seizure at the time of the actions in this case. No, actually, his girlfriend's testimony is that he suffered from seizures in the past. Yes. And that she saw him moving his head from side to side, which either could have been going into or coming out of a seizure. Exactly. If he wasn't there. So when you say unrebutted evidence that he was suffering a seizure at the time, isn't that an overstatement of her testimony? I don't think that's an overstatement. Ms. Stelle stated that Mr. Jackson was moving his head from side to side, which in her experience indicated, as Your Honor said, that he was going into or coming out of a seizure. And Ms. Stelle arrived when he was being put into the ambulance. So we can infer from the evidence that in the immediate time leading up to when Ms. Stelle arrived, he was undergoing or coming into a seizure, according to Ms. Stelle's testimony. That's the evidence that was presented. The State did not rebut that evidence through any medical evidence or through any other witness. Actually, the paramedics testified when they had him in the ambulance he was thrashing. Indeed. And conscious. He was moving from side to side because he's struggling against the restraints. So isn't that, you know, again, we're talking about no rational trier of fact would have found the State sustained its burden of proof. That's true. What we're also saying is that Mr. Jackson has raised the issue of his voluntariness, and the State has to rebut that with some evidence. The evidence that the paramedics presented, or the opinion that they expressed, was that Mr. Jackson was thrashing about. They said that thrashing about and flailing your arms and legs is consistent with a seizure, that seizures present differently in different people. But in their opinion, because Mr. Jackson was able to vocalize, was able to ask questions, he was not suffering from a seizure. But as we've looked at in People v. Grant, the Elmhurst Supreme Court case, a person can vocalize and be aggressive and still be experiencing a seizure. Was there expert testimony in Grant? There was expert testimony in Grant. Yes, Your Honor. And in this case, what we have is the paramedics agreeing with the police that he was having a medical emergency of some sort. So to say that he was thrashing about in the ambulance really actually supports Mr. Jackson's defense that he was suffering from a seizure. So in this case, the evidence is closely balanced, Your Honor, because there's been no evidence presented to rebut Mr. Lee's testimony. And in fact, the State's witnesses corroborate his defense. Counsel, could a rational jury act irrationally if they're permitted to hear inadmissible evidence? Yes, Your Honor. I think that's a very good point. And in this case, not every inference is a reasonable one. And here in this case, the lay witness testimony was inadmissible evidence, as we've argued, because they weren't qualified as witnesses. And the State relied on that evidence in closing argument and relied on that evidence to say that in the professional experience of these paramedics that he was not suffering from a seizure. Of course that had an impact on the jury's determination in this case. Now, you also challenged the admission of testimony that the paramedics noticed the smell of marijuana. Yes, Your Honor. I'll move on to that issue. Putting aside reasonable doubt, Mr. Jackson did not receive a fair trial. The State's case, as we've just discussed, boiled down to whether he was suffering from a seizure and whether the jury believed he was suffering from a seizure. Instead of focusing on proving the elements of the actual charges, the State introduced propensity evidence, suggesting that Mr. Jackson was the sort of person who commits crimes and needs to be locked away. Illinois courts have clearly held that a jury is influenced by propensity evidence. The prosecution's commentary about the other criminal acts is precisely the bad character accusation prohibited by the rule. What if instead of smelling like marijuana, he smelled like alcohol? Could they say that? I believe there is some case law, yes, Your Honor, about intoxication. Okay. So if the source of intoxication is alcohol, it's okay for the paramedics to say that. But if he smells like marijuana, they can't say that. Well, Your Honor, I would suggest that the intoxication with alcohol is not necessarily a criminal offense, whereas cannabis intoxication is presumably a criminal offense. But a paramedic responding to an intoxicated patient is something the paramedic has to take into account, right? Yes, Your Honor. I agree with that completely. And in this case they could have said he appeared intoxicated. They just couldn't say with what. But they didn't say that he appeared intoxicated. But they could have. I mean, I'm trying to parse here. It's okay to say he appeared to be under the influence of alcohol, but you can't say he appeared to be under the influence of marijuana. Testifying that Mr. Jackson appeared to be under the influence of cannabis intoxication is an effort to cast Mr. Jackson as a bad man. Speaking to the circumstances of the arrest, yes, Illinois courts have held that you can talk to about other acts, prior bad acts, that occur if they're necessary to explain the circumstances of the arrest. But here the State relied on the cannabis intoxication not only in closing argument but also in opening statements. So in this case the State made an argument about Mr. Jackson's cannabis intoxication. This evidence had no probative value. It's true that other crimes' evidence is admissible if it's for another purpose other than propensity. But the evidence must, quote, tend to prove that the defendant committed the charged crime. The State must also show that the crime took place and the defendant committed the crime or participated in its commission. And the probative value must outweigh the prejudicial effect. Here the prosecution did not demonstrate that Mr. Jackson ingested cannabis. There is no evidence regarding THC in his blood. There is no evidence about any amount of cannabis hypothetically ingested. And the State made no demonstration that cannabis could have contributed to Mr. Jackson's behavior. So if the State is trying to argue that a cannabis smell showed Mr. Jackson somehow acted knowingly and voluntarily, that is pure speculation. The State has failed to show how cannabis odor makes it more or less likely that Mr. Jackson committed the charged offense. Your Honor, as I stated, it is also true that other crimes' evidence may be permitted to explain the circumstances of the arrest, but the State did not use this evidence to explain those circumstances. And we know this because Mr. Jackson called 911 himself. The State's argument about the circumstances of Jackson's arrest is not persuasive because the State relied on the evidence in closing and in rebuttal. This was a jury trial where the jury was given no guidance on how to weigh the evidence. And the State's use of this evidence is an attempt to make Mr. Jackson look like a drug user. There is simply no reason for the State to emphasize this irrelevant and prejudicial evidence other than to incite prejudice in the jury based on propensity. The admission of this improper evidence tainted the central issue in this case and denied Mr. Jackson a fair trial. Your Honor, just briefly on prosecutorial misconduct in this case, I intend to touch on the fact that the prosecution alluded to other charges and shifted the burden of proof. Prosecution also attempted to bolster the credibility of the State's witnesses by alluding to other charges that could have been, but were not, brought in this case. This is a solely emotional argument that is not based on the evidence and does not shed any light on the question for decision. In addition, the prosecutor also implied that the burden of proof should be on the defendant to produce more witnesses. The law is clear that a prosecutor is not committed to comment on a defendant's failure to produce evidence. Your Honors, the prosecutor's comment should not be taken in isolation, but should be examined together in context in light of their cumulative effect. The pattern of painting Mr. Jackson as a criminal and shifting the burden of proof denied Mr. Jackson his right to a fair trial. Didn't defense counsel argue in closing that the paramedics had been hit and kicked by Mr. Jackson yet no charges were brought arising out of that? Yes, Your Honor. Okay, so why can't the State respond to that and say we didn't bring those charges? The State could have responded exactly in that way that you suggested, that the State didn't bring those charges because there was no offensive conduct that was supported by the evidence. Well, no, they don't have to say it's not supported by the evidence. They didn't bring the charges. You know, the suggestion I think in closing argument by the defense was this is all nonsense because if Jackson was voluntary, then he was voluntary to all these people that were there. Why not charge them all? And so when the State is accused of, I don't know, undercharging, isn't it entitled to respond? The State is entitled to respond, but it's entitled to respond based on the evidence. The State could have responded that it did not charge these other offenses because there was no other charges that were brought. Instead, what the State says — Or they exercised their prosecutorial discretion not to, not because the evidence wasn't there, but they chose not to charge them. And that could have been a fair remark. Instead, what the prosecution said was, Your Honor, is that these, quote, paramedics could have had complaints for assault, for battery, or for a bunch of other things. We don't have those before you. You could have had a battery to stay put in for a bite, but you don't. We submit that to you as evidence of the credibility. Prosecution's comments in this case were not invited in that they responded in a way that was unfair. The prosecution was invited to respond based on the evidence. In this case, they responded by suggesting that there was uncharged hypothetical offenses that Mr. Jackson could have been convicted of. But you say the only proper way they could have responded was to say there was no evidence. I don't — I don't understand. Not the appropriate response.  And I think what the appropriate response is, Your Honor, is to respond based on the evidence and not to enlist or elicit hypothetical uncharged offenses that Mr. Jackson could have been convicted of. Instead, as Your Honor suggested, one way to respond was to say that no other charges were brought and that the prosecutor declined to exercise its discretion. That would have been a fair comment in response to the defense argument. Instead, they went beyond the bounds of fair argument in this case by suggesting a litany of offenses that Mr. Jackson could have been convicted of and then suggesting that that enhanced the credibility of their own witnesses. And a question off-point, just a factual question. You mentioned that there was testimony that Mr. Jackson wore leg braces. Yes. Was there testimony at trial that he was paralyzed from the waist down? Not at trial, Your Honor. There was testimony that he was wearing leg braces and one of the paramedics felt those leg braces. The testimony about him being paralyzed came out at sentencing. And, in fact, the trial judge accepted that evidence and that was one of the reasons he was sentenced to conditional discharge due to his medical condition. Your Honors, in closing, the State did not meet its burden to prove both knowledge and the voluntary act. For putting aside whether or not the evidence was legally sufficient, Mr. Jackson's trial was replete with mistakes and prosecutorial overreach. The effect of those errors denied Mr. Jackson a fair trial. For this and the other reasons argued in the brief, we ask that this Court reverse his convictions and amend his case for a new trial. Are there no other questions? Thank you, Your Honor. Thank you. Good morning, Your Honors. Again, Assistant State's Attorney Sheila O'Grady-Kroniak on behalf of the people. With your permissions, Honors, I'd like to start with the last point that you raised, Justice Heilman, about the testimony as to whether the defendant was paralyzed. The actual testimony at trial by paramedics Stapleton and Pipe and Nurink was that the defendant walked, unassisted, out to the ambulance and said, that's not an ambulance, you're not EMTs. The testimony at trial established that he was capable of independent movement and walked without the assistance of crutches, didn't have a walker, didn't have a wheelchair. Officer Pike testified that he felt some hard casing on the defendant's legs, and that's it. That's all we have for the factual evidence that was before the jury in this case to determine whether defendant's conduct was voluntary. The competent evidence that was produced at trial was sufficient for a rational trial, in fact, to determine that the State established that James Jackson did commit battery and did resist the arrest. The only evidence that we have contrary to that was that of defendant's girlfriend, Stephanie Stelly, who arrived after the incident occurred and could not testify as to what happened when the paramedics and the officers were actually present. And even she could not state whether he was coming out of a seizure or going into a seizure. If he was going into a seizure, then he wouldn't have been having one when the paramedics and the police officers were there. It was absolutely rational for the jury in this case to reject Stelly's testimony because it didn't explain any of the events that actually happened during the incident in question. It was rational for the jury to accept the testimony of Officer Pike and of Officer... I'm not sure how to pronounce his name. Wolczyk. Wolczyk, thank you. That defendant, when he saw the officers, was combative. He was already struggling with the paramedics. Yes, defendant called for help. They were attempting to give him that help that he had requested. Once the paramedics were there, as Your Honor pointed out, they can't just turn around and turn their backs on defendant. They were trying to get him to the hospital to get him the help that he required. Just because defendant was acting irrationally doesn't mean that defendant was acting involuntarily. The fact that defendant was clearly something was wrong. We will never know what exactly happened because... Both the officers and both of the paramedics stated that there was something medically wrong in this man and that his actions were not rational, right? Whether they're irrational doesn't mean that they're involuntary. Well, it's not involuntary. It's knowing, I mean, he can act involuntarily and still not know what he's doing, as was pointed out by counsel. The question really is if someone is undergoing some kind of medical emergency, which is why he called for an ambulance in the first place. And everybody responding says, yeah, this guy is, there's something wrong, right? Nobody says there wasn't anything wrong with that. He was taken from the scene to the hospital. Correct. So obviously there was something wrong with him in the head, right? Something had to be, for him to state that the ambulance was not an ambulance, the paramedics were not paramedics. So they all knew that. So then the question is, really gets down to the knowing, did he know what he was doing and the fact that he's being restrained and he's saying some crazy things like an ambulance is not an ambulance, he's calling 911, doesn't believe the paramedics, that doesn't all add up with knowing what he's doing. It also doesn't, there was no affirmative defense of insanity filed in this case. They don't have to say he's insane, they don't have to say he's insane. They did have some evidence, as Cassa pointed out, the question was whether they put forward something to show that, you know, there was a mental situation here. Again, there wasn't enough evidence. They used the burden of proof to show, you know, that it was done knowingly rather than that it was involuntary. Correct. And there was not enough evidence at trial presented by defendant to contradict the paramedics' testimony that this wasn't a seizure, this was voluntary. What would they have to do, in your opinion, in order to meet that? I mean, what do they not do that you say that they shouldn't have done? Well, we're getting into speculation here. Right, but you're saying they didn't do it, so there must be something missing. They could have testified just as defense counsel charged that the state could have called expert medical testimony, defense counsel could have as well. But the cases say they don't have to. Yeah, they weren't required to present any evidence. Correct. The burden was on the state. Right, and the state met their burden by the testimony of the officers and the EMTs stating that he was acting knowingly and voluntarily. But they didn't say you can't make that decision, can you? That's the ultimate decision to be made. It was ultimately to the jury to determine whether that burden was met, and the state's testimony in the form of the paramedics and their officers, they testified that he was acting voluntarily. The officers specifically stated that he was. And the only thing we had in rebuttal from the defense was his girlfriend saying that it may or may not have been a seizure before or after the event. You don't need more than that. You're skipping everything that happened before she arrived. I mean, we just went over the fact that everybody says he was not right in the head. In one way or the other, they're saying he's not right in the head. Yet, you're saying he knows exactly what he's, you know, the officer's saying, he knows what he's doing, even though he's got a mental situation. We don't know whether it's epilepsy or seizure or whatever it is. We don't know. But he's not right in the head. Definitely not right in the head. They all know that. Right. Right. And yet, so he's saying crazy things. Nothing he says makes sense. He's thrashing about. I mean, how do you translate that into knowing? Well, Your Honor, just because you're not right in the head doesn't mean you get to kick people. Well, when you're not right in the head, you do things involuntarily. Right? That's what happens. That's why he needed some kind of hospitalization. He knew something was going on. That's why he called for an ambulance. Right. He needed help. And apparently maybe he probably got it when he got to the hospital. But whatever, he needed help. And the fact is that police officers and paramedics are used to people being in a condition that they may flail around. Is that annoying a crime? He's been charged with battery and resisting arrest because he's flying around, because he's acting out whatever. I mean, we know that he's not right. Correct. From the evidence that we have at trial and from the arguments that have been developed on appeal, we do not have sufficient evidence to say what the medical issue was. I understand. And based on the evidence at trial, the question on appeal is whether the jury, any rational trial or fact, could have found that this was voluntary. In this case, the jury did, and they did have sufficient evidence at trial to support that determination. And that evidence was? That defendant was not undergoing a seizure. Well, stop right there. Because what you said in your brief is that both paramedics testified that they had observed hundreds of seizures and that defendant's behavior was not consistent with that of a typical seizure patient. Typical. Correct. Well, typical doesn't, this could be atypical. So that means nothing. The fact that it may not be typical, not everybody has the same thing. They may never, you know, what they're saying is that we've never heard anybody talk like this, even though it's nonsense. The fact that it was vocal, that made it atypical. But that doesn't mean, these are not doctors. They haven't studied seizures or anything like that. The fact that they've seen it, they're testifying as experts and they weren't qualified as experts. With regard to that, I would argue that just as this court found in boxes that an eyewitness could give their opinion that a person was having a seizure, in this case the converse would be true. An eyewitness who was not an expert but was testifying that based on their observations and with the history of their experience, this person was not having a seizure. If it's true in boxes, then the converse has to be true here. If an eyewitness can testify that a person is having a seizure, then an eyewitness should be able to testify that a person is not having a seizure. For example, if one of Mr. Jackson's neighbors was out there observing what was going on, that neighbor could say, it didn't seem like he was having a seizure to me. Exactly. Or his girlfriend could have testified the opposite, that yes, he has this history of seizures and this was not a seizure. And her testimony would have been just as entitled to the same weight as the paramedics. It's that in this case, the jury was given the two conflicting explanations for his behavior and found that the paramedics' testimony was more credible. Well, I'm a little troubled by lay witnesses expressing an opinion or making a medical diagnosis, whether it was done in a previous case. This is a criminal case. We're very concerned about what's going on here. I'm just troubled that a man calls for help and a medical call for help morphs into being charged with battery-resistant arrest. How does that occur? Well, Your Honors, I am not involved at the trial level. I don't make that decision. With respect in kicking somebody, maybe they didn't strap him down right, so that they had him in the gurney properly. Well, the kicking occurred in the vestibule. So to avoid being arrested and to avoid being taken in by the police officers, he then, when Officer Wojcik arrived, then deliberately kicked Officer Wojcik as he came into the vestibule. What evidence do you have that it was deliberate? That Officer Wojcik testified in his opinion that the defendant was deliberately kicking him. As he entered the vestibule, the defendant then started kicking Officer Wojcik as he was attempting to assist. Isn't he testifying with respect to the ultimate decision that's supposed to be made by the jury? Isn't he invading their province when he says he intentionally or he wanted to kick him? He kicked me and left the jury to decide. Right. And I don't think Officer Wojcik's testimony was specifically, yes, this was voluntary. It was that in his opinion it was voluntary. And so the jury was entitled to either accept or reject that opinion. Is that something that the jury needs an opinion on, whether or not it was voluntary? Can't they make that determination themselves? Yes or no? Well, yes, the jury can make that determination themselves based on this testimony. But he didn't need to tell them that it was voluntary. That's something that they decide. All he could say was he kicked me. Correct. Okay. Period. You decide. Otherwise we don't leave. Not only that, the fact is that while he was in the vestibule, which is when the kicking, they try to put the handcuffs on him. Correct. It was also at the time that he's saying crazy things. He's moving crazily. Apparently he was tossed against the wall and fell down the wall. Again, we have a situation where somebody's not sound of mind. And when you have that, naturally somebody might kick. That happens. I mean, what's the difference between, I mean, how does the law differentiate between somebody who's, I mean, you have a mental condition and the police and ambulance can't handle you, and you are flailing and you hit a police officer, that's a crime, right? Yes. Even though you're mentally unbalanced. If I come up to you and in my unstable mind I think you are my worst enemy, and in fact I don't know you, and I punch you in the jaw, is that a battery? Well, you would have to then file the affirmative defense and argue that you were unable to appreciate the substantiality of your conduct and you were unable to appreciate the criminality of your conduct. We did not have that in this case. We solely had trial counsel make the strategic decision to solely proceed on the epilepsy, to say that his movements were involuntary because of the epilepsy, not because of the underlying medical condition or whatever was happening that day. I would submit that it was not an epileptic seizure based on the testimony of the paramedics. We could speculate as to what the issue was. It may be any number of things, but there was no testimony at trial establishing that he could not appreciate the criminality of his conduct. We have the testimony of his girlfriend who said he had 20 seizures. That's uncontradicted. And the fact is that the evidence you're looking at, they couldn't even assess it. So not being able to assess somebody, yet they can tell you whether it's a seizure or not? Yes. Well, that doesn't follow. I mean, that's why we needed some kind of... Well... That's why they can't testify as to the way they did, because they're not experts on it. There's hundreds of medical conditions that could be at part here, but the fact that they can't testify as to which of those hundreds could be doesn't mean that they can't rule out what it's not. Well, yes, it does, when they're not experts in seizures. Nobody said they were experts in seizures or didn't have any training in seizures. They had some experience. Yes. But they've seen it. But this may not have been the typical case they've seen, because they hadn't seen a case where somebody had been vocal, apparently. Also because they were able to tell that defendant was acting voluntarily. A seizure patient, generally after a seizure, is inert, and they said that they're typically spent after a seizure. They're exhausted. They're not able. The paramedics said they're not able to fight the way the defendant was fighting, that they're just spent, and they are sluggish and slow to respond. They aren't able to fight off for two paramedics and two officers. Well, that's why we need expert testimony, because that's coming in as if they're experts. And the jury is saying that if they're experts and the fact was used that way, wasn't it by the prosecution in the closing? I don't believe it was used as expert testimony in the closing argument. They referred to the testimony as it was properly introduced and unobjected to at trial. If the testimony is entered into trial, they can comment on the evidence in the closing argument. That does not rise to prosecutorial misconduct. That is them restating the evidence that was introduced at trial, that the paramedics, based on their experience, they've seen hundreds of seizure patients. This is not a seizure. And we have let untrained witnesses to accidents say the driver appeared to be suffering a seizure. Exactly. Right. So based on the evidence as introduced at trial, the state did meet its burden and did sufficiently prove that James Jackson committed battery and resisted Officer Pike. And so for those reasons, and those stated in my brief, unless you have any further questions, we ask that you affirm defendant's conviction and sentence. Thank you. Your Honor, just very briefly in rebuttal, two points. The state agrees that Mr. Jackson's acting irrationally. There's clearly something wrong, and he was clearly suffering from a medical issue. But they also argue that Mr. Jackson did not present evidence to contradict the paramedics' testimony that this was not a seizure. As Your Honor has pointed out, Mr. Jackson was not required to present any evidence. And I must reiterate that the state has the burden to prove a knowing involuntary act, as the Illinois Supreme Court has stated in Grant, an involuntary act is one performed without knowledge. And Mr. Jackson has presented unrebutted testimony, as we discussed in the opening arguments. Your Honor, in addition, you have asked questions about lay opinion testimony and whether a witness could testify on the street that someone was having a seizure. And in fact, that is exactly what Stephanie Stelly did in this case. She testified as a lay opinion. What the paramedics did as lay opinion witnesses, what the paramedics did in this case was testify as experts because they relied on their specialized knowledge, and the state emphasized that specialized knowledge in closing argument to the jury. So for these reasons and the reasons stated in the briefs, Your Honor, if there are no other questions, I submit it for your judgment. Thank you. Thank you very much. I will take case under advisement. We appreciate the hard work you both put in on the briefs and the excellent arguments. We have a lot to think about. We appreciate it. And we'll stand adjourned. Thank you. Thank you.